IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| AMTRUST INTERNATIONAL UNDERWRITERS LIMITED, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 18-09019-CV-W-ODS ) ) |
| JERALD S. ENSLEIN, in his capacity as Chapter 7 Trustee for Xurex, Inc., et al., | ) ) ) |
| Defendants. | ) ) |

## ORDER AND OPINION (1) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT JERALD ENSLEIN'S MOTION FOR LEAVE TO FILE SUR-REPLY

Pending are Plaintiff AmTrust International Underwriters Limited's Motion for Partial Summary Judgment, and Defendant Jerald Enslein's Motion for Leave to File Sur-Reply. Docs. #78, 88. For the following reasons, Plaintiff's Motion for Partial Summary Judgment is granted, and Enslein's Motion for Leave to File Sur-Reply is denied.

## I. BACKGROUND
### A. Xurex's Bankruptcy

On October 17, 2014, Xurex, Inc. filed a voluntary Chapter 7 petition for bankruptcy in the United States District Court for the Western District of Missouri. No. 14-43536-drd. Jerald Enslein was appointed to serve as trustee in the Xurex bankruptcy case. In March 2016, Enslein sent litigation hold letters to, among others, Xurex, DuraSeal Holdings S.r.L., DuraSeal Pipe Coatings Company LLC, and Joe Johnston informing them that they were being investigated and would likely be the subject of litigation. On August 31, 2016, Enslein, as trustee for Xurex, filed an adversary proceeding in the bankruptcy case. Adv. Proc. No. 16-4103.

### B. Enslein Lawsuit[1]

In October 2016, Enslein asked the District Court to withdraw the reference of the adversary proceeding to the Bankruptcy Court. No. 16-9020 (Doc. #1). The Honorable Howard F. Sachs granted Enslein's request in April 2017 and withdrew the reference. *Id.* (Doc. #5) (hereinafter, "Enslein Lawsuit"). In May 2017, the matter was transferred to the undersigned, who has presided over the matter since then.

In the Enslein Lawsuit, statutory and common law claims are brought against Giacomo Di Mase, Leonard Kaiser, Tristam[2] Jensvold, Steve McKeon, Lee Kraus, Jose Di Mase, DuraSeal Pipe Coatings Company LLC, DuraSeal Holdings S.r.L., Joe Johnston, Dietmar Rose, and Robert Olson. *Id.* (Doc. #1-2). Enslein contends Giacomo Di Mase, Kaiser, Jensvold, McKeon, Johnston, Rose, Olson, and others were members of Xurex's Board of Directors when the actions giving rise to the lawsuit occurred. *Id.* (Doc. #1-2, ¶¶ 11-16, 20-22). According to Enslein, Defendants breached agreements executed in 2010 and 2012; breached the covenant of good faith and fair dealing when executing the agreements; misappropriated Xurex's trade secrets; conspired to commit unlawful acts, causing Xurex to execute an agreement in September 2014; breached their fiduciary duties by causing Xurex to, among other things, execute the September 2014 agreement; and fraudulently transferred assets in connection with the September 2014 agreement. *Id.* (Doc. #1-2, ¶¶ 178-240). In August 2018, Enslein amended his complaint to include claims against another corporate entity (HDI, Holding Development Investment, S.A.) and revise and supplement the claims and allegations against the other Defendants. Doc. #243.

### C. This Lawsuit

This matter concerns a directors and officers liability insurance policy Plaintiff issued to Xurex, and whether that policy requires Plaintiff to defend and indemnify certain Defendants in the Enslein Lawsuit.

---

[1] For a more detailed description of the Enslein Lawsuit, *see* No. 16-9020 (Doc. #434).
[2] It is unclear if Jensvold's name is "Tristram" or "Tristam" because both have been used in the Enslein Lawsuit. The Complaint uses "Tristam," so the Court does the same.

### (1) Xurex's Application for Insurance

In May 2014, Kaiser, Xurex's then-President and CEO, executed an application for insurance. The following paragraph appears at the top of the application's first page:

> **NOTICE: THE POLICY [FOR] WHICH YOU ARE APPLYING IS A CLAIMS-MADE POLICY. THE POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF ELECTED, THE EXTENDED REPORTING PERIOD, SUBJECT TO THE POLICY PROVISIONS. DEFENSE COSTS ARE APPLIED AGAINST THE APPLICABLE RETENTIONS. DEFENSE COSTS REDUCE AND MAY EXHAUST THE APPLICABLE LIMITS OF LIABILITY. THE INSURER IS NOT LIABLE FOR ANY LOSS, WHICH INCLUDES DEFENSE COSTS, IN EXCESS [OF] THE APPLICABLE LIMITS Of LIABILITY.**

Doc. #79-4, at 2.[3]

### (2) Relevant Portions of the Policy

Plaintiff issued a directors and officers policy ("the policy") to Xurex for the period of June 1, 2014, to June 1, 2015, with a liability limit of $1,000,000. Doc. #79-3, at 3. The policy begins with "General Declarations." The first paragraph in the "General Declarations" provides the following:

> NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I)CLAIMS FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE **EXTENDED REPORTING PERIOD**, AND (II)OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE ELEMENT** AND THE FIDUCIARY LIABILITY **COVERAGE ELEMENT**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND

---

[3] Page references relate to the pagination applied by the Court's CM/ECF system when a document is filed by a party. In addition, the Court, unless otherwise noted, quotes the policy language and uses the same capitalization and emphasis in the policy.

REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Doc. #79-3, at 3. The "General Terms and Conditions," which are "a part" of the policy and to which the insured agrees, include, *inter alia*, "Terms and Conditions," "Definitions," and "Reporting and Notice" provisions. *Id.* at 5-11.

## I. TERMS AND CONDITIONS

In addition to the terms and conditions set forth in these General Terms and Conditions, the terms and conditions of each **Coverage Element** shall apply to, and only to that particular **Coverage Element** and in no way shall be construed to apply to any other **Coverage Element.** If any provision of the General Terms and Conditions is inconsistent or in conflict with terms and conditions of any **Coverage Element,** the terms and conditions of such **Coverage Element** shall control for purposes of that **Coverage Element.**

\* \* \* \*

## II. DEFINITIONS

\* \* \* \*

C. **Coverage Element** means collectively or individually the Directors and Officers and Private Company Liability **Coverage Element**, the Directors and Officers and Public Company Liability **Coverage Element**, the Employment Practices Liability **Coverage Element** or the Fiduciary Liability **Coverage Element** but only with respect to those indicated as included as part of this policy by all three of the following:
  (i) indicated by ☒ in the General Declarations. (☐ indicates the **Coverage Element** is not included)
  (ii) for which a **Coverage Element** Limit of Liability is indicated in Item 3 of the General Declarations; and
  (iii) for which such **Coverage Element** Declarations and coverage form are attached to and form part of this policy.

\* \* \* \*

## VI. REPORTING AND NOTICE

A. The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** by mail or electronically to the address set forth in Item 4(b) of the General Declarations of:
  (i) any **Claim** made against an **Insured**,
  (ii) any matter which could involve the payment of **Adverse Media Event Loss** under the Directors and Officers and Public Company Liability **Coverage Element** or Directors and Officers and Private Company **Coverage Element**, if purchased;

4

(iii) any matter which could involve the payment of **Voluntary Compliance Loss** under the **Fiduciary Liability Coverage Element**, if purchased; or

(iv) any **Derivative Demand** Investigation under the Directors and Officers and Public Company Liability **Coverage Element** or Directors and Officers and Private Company **Coverage Element**, if purchased,

as soon as practicable but no later than 60 days after the expiration date shown in Item 2 of the General Declarations or its earlier cancellation or prior to the end of the Extended Reporting Period, if applicable.

* * * *

B. If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** become aware of any circumstances or **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and give notice, by mail or electronically to the address set forth in Item 5 (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act**, the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the Insureds and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

Notice…shall reference the policy number…. If mailed, the date received by the **Insurer** shall constitute the date that such notice was given.

*Id.* at 5, 7-8. The policy also includes a provision for an extended reporting period, if purchased by the insured. *Id.* at 8-9. It is undisputed that Xurex did not purchase the extended reporting period, and thus, the extended reporting provision is not applicable. *Id.*; Doc. #79, at 18; Doc. #85, at 19; Doc. #86, at 7.

The Insuring Agreements for the "Directors and Officers and Private Company Liability Coverage Element" provide the following:

I. **Insuring Agreements**

**Coverage A: Individual Insurance Coverage**
The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the **Extended Reporting Period**, if applicable, for any actual or alleged

5

> **Wrongful Act** of such **Individual Insured**, except when and to the extent that a **Company** has indemnified the **Individual Insured** for such **Loss**.
>
> **Coverage B: Company Reimbursement Coverage**
> The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against an **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**, but only and to the extent that such **Company** has indemnified such **Individual Insured** for such **Loss**.
>
> **Coverage C: Company Reimbursement Coverage**
> The **Insurer** shall pay **Loss** of a **Company** arising from a **Claim** first made against a **Company** during the **Policy Period** or the Extended Reporting Period if applicable for any actual or alleged **Wrongful Act** of a **Compan**y.
>
> **Coverage D: Adverse Media Event Coverage**
> The **Insurer** shall pay **Adverse Media Event Loss** up to the amount of the **Adverse Media Event Loss** Sub-Limit of Liability set forth in Item 3(b) of the Directors and Officers and Private Company Liability **Coverage Element** Declarations incurred by a Company solely with respect to an **Adverse Media Event** that first occurs and is reported to the **Insurer** during the **Policy Period**…. Coverage under this Coverage D shall apply regardless of whether a **Claim** ever is made against an **Insured** arising from such **Adverse Media Event** and, in the case where a **Claim** is made, regardless of whether the amount is incurred prior to or subsequent to the **Claim** being made.
>
> **Coverage E: Derivative Demand Investigation Costs Coverage**
> The **Insurer** shall pay **Investigation Costs** up to the amount of the **Derivative Demand** Investigation Sub-Limit of Liability set forth in Item 3(c) of the Directors and Officers and Private Company Liability **Coverage Element** Declarations incurred by a **Company** solely in response to a **Derivative Demand** first made and reported to the **Insurer** during the **Policy Period**….

Doc. #79-3, at 13.

Pursuant to the policy, an "Insured" includes an "Individual Insured." *Id.* at 15. An "Individual Insured" is an "Executive," "Employee," or "Outside Entity Executive." *Id.* "[A]ny past, present or future duly elected or appointed director, officer, management committee member of a duly constituted committee or member of the Board of Managers" is an "Executive." *Id.* The policy defines a "Claim" as:

1. a written demand, other than a **Derivative Demand**, for monetary, nonmonetary or injunctive relief (including any request to toll or waive any statute of limitations);

2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:
    (i) service of a complaint or similar pleading;
    (ii) return of an indictment, information or similar document….; or
    (iii) receipt or filing of a notice of charges….

*Id.* at 14. The policy defines "Loss" as:

1. the amount that any insured becomes legally obligated to pay in connection with any covered **Claim**, including but not limited to
    (i) judgments (including pre-judgment and post-judgment interest on any covered portion thereof) and settlements; and
    (ii) damages, including punitive or exemplary damages and the multiple portion of multiplied damages relating to punitive or exemplary damages. The enforceability of this subparagraph (ii) shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiple damages;
2. **Defense Costs**….

*Id.* at 15. The policy defines "Wrongful Act" as:

1. any breach of duty, neglect, error, misstatement, misleading statement, omission or act by an **Individual Insured** in their respective capacities as such, or any matter claimed against such **Individual Insured** solely by reason of his or her status as an **Executive, Employee,** or **Outside Entity Executive**; or
2. Any breach of duty, neglect, error, misstatement, misleading statement, omission or act by a **Company**.

*Id.* at 16.

The policy excludes certain claims and events. For example, Claims "based upon, arising out of, attributable to, or alleging (a) any **Wrongful Act**, or (b) any Related Wrongful Acts, any one of which was committed or alleged to have been committed prior to June 1, 2014" are excluded. *Id.* at 27. In addition, the policy excludes coverage for claims made against an insured "arising out of, based upon or attributable to…any **Wrongful Act** by any former director or officer who ceased serving as such prior to June 1, 2014," including "any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances, which have as a common nexus any **Wrongful Act** or **Related Wrongful Acts**, facts, or circumstances related to such." *Id.* at 31. And the policy does not cover "**Loss** in connection with any **Claim** made against any Insured…alleging,

7

arising out of, based upon or attributable to… misappropriation… or any other intellectual property rights….." *Id.* at 16, 34.

### (3)     **Notification to Plaintiff**

On October 5, 2016, Kaiser notified Plaintiff of the Enslein Lawsuit and requested Plaintiff provide him with a defense and indemnity. It is undisputed that Kaiser's communication was Plaintiff's first notice of a "Claim" under the policy. Doc. #79, at 19; Doc. #85, at 20; Doc. #86, at 8. Plaintiff denied Kaiser's tender. In November 2016, Kaiser sought reconsideration. In response, Plaintiff reasserted its coverage position.

On September 24, 2018, McKeon provided notice of the Enslein Lawsuit to Plaintiff and asked Plaintiff to provide him with defense of the claims against him. Plaintiff denied McKeon's tender. In March 2019, McKeon asked Plaintiff to reconsider its decision. Plaintiff reaffirmed its coverage position.

### (4)     **Allegations in This Lawsuit**

In September 2018, Plaintiff filed an adversary proceeding in the bankruptcy case. Adv. Proc. No. 18-4222-drd. Plaintiff asked the District Court to withdraw the reference of the adversary proceeding to the Bankruptcy Court. In October 2018, Plaintiff's request was granted, and the reference was withdrawn. Docs. #9. In the Complaint, Plaintiff asks the Court to find and declare (1) the policy does not cover any claims against Defendants Giacomo Di Mase, Kaiser, Jensvold, McKeon, Johnston,[4] Rose, and Olson in the Enslein Lawsuit; and (2) it has no duty to defend or indemnify Defendants in connection with the Enslein Lawsuit. Doc. #9.

During the pendency of this matter, the Court entered default against Giacomo Di Mase and Jensvold. Docs. #70, 76. The Court also granted joint motions to dismiss filed by Plaintiff, Rose, and Olson. Docs. #21-22. Both Rose and Olson agree to be bound by the Court's ruling regarding whether Plaintiff owes them a duty to defend or indemnify. Docs. #15-16. The remaining Defendants are Enslein, Kaiser, McKeon, Kraus, and Johnston.

---

[4] The Complaint refers to "Johnston" and "Johnson." *See* Doc. #12. For consistency's sake, the Court uses "Johnston."

### (5) Pending Motions

Plaintiff now moves for summary judgment on Counts I and II of its Complaint. Docs. #78-79. Enslein and McKeon responded to Plaintiff's motion. Docs. #85-86. Kaiser, Kraus, and Johnston did not respond to Plaintiff's motion, and the time for doing so has passed. L.R. 7.0(c)(2). After Plaintiff filed its reply (Doc. #87), Enslein sought leave to file a sur-reply. Doc. #88. Plaintiff responded to Enslein's motion. Doc. #89. Enslein did not file a reply in further support of his motion, and the time for doing so has passed. L.R. 7.0(c)(3). Thus, both motions are now fully briefed.

## II. MOTION FOR SUMMARY JUDGMENT

### A. Standard

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). The Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Discussion

"Disputes arising from interpretations and application of insurance contracts are matters of law for the court where there are no underlying facts in dispute." *Intermed*

*Ins. Co. v. Hill*, 367 S.W.3d 84, 88 (Mo. Ct. App. 2012) (citation omitted); *see also McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 171 (Mo. banc 1999) (citation omitted).[5] "The provisions of an insurance policy are read in context of the policy as a whole," and "[t]he language in a policy is given its ordinary meaning unless another meaning is plainly intended." *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. banc. 1998) (citations omitted); *see also Philadelphia Consol. Holding Corp. v. LSI-Lowery Sys., Inc.*, 775 F.3d 1072, 1076-77 (8th Cir. 2015) (noting, under Missouri law, an insurance policy's terms are given "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.") (citation omitted). If the language is unambiguous, the Court must interpret the policy as written, but if the language is ambiguous, the Court must interpret the policy in favor of the insured. *Philadelphia Consol. Holding Corp.*, 775 F.3d at 1076; *Daughhetee*, 743 F.3d at 1133 (citations omitted).

### (1) Claims Made Coverage and Occurrence Coverage

In general, there are two types of professional liability insurance policies: claims made policies and occurrence policies. "[C]laims made policies generally are triggered by the date the claim is made upon the insured." *Wittner, Poger, Rosenbaum & Spewak, P.C. v. Bar Plan Mut. Ins. Co.*, 969 S.W.2d 749, 752 (Mo. banc 1998) (citation omitted). "*Occurrence* insurance policies generally provide coverage for an event that occurs during the policy period, regardless of when a claim is asserted." *Id.* (emphasis in original); *see also Landry*, 292 S.W.3d at 356 (Mo. Ct. App. 2009) (citation omitted). The parties agree the policy provides claims made coverage, but they disagree on whether the policy also provides occurrence coverage.

Enslein and McKeon argue the policy provides occurrence coverage. In support, they rely on a portion of the "Notices" paragraph in the policy's "General Declarations."

> NOTICES: THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I)CLAIMS FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE **EXTENDED REPORTING PERIOD**, AND (II)OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST

---

[5] The parties cite and rely on Missouri law; the Court does the same.

OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI…. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

Doc. #79-3, at 3. Enslein and McKeon contend coverage is triggered specifically by "(II)OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY." *Id.* (hereinafter, "Part II of the General Declarations' Notices").

While Enslein and McKeon would like the Court to begin its analysis with Part II of the General Declarations' Notices, the Court must first examine the policy's insuring clause to determine the policy's coverage. "The original point of embarkation upon the determination of insurance coverage questions must always be the insuring clause of the policy." *Cont'l Cas. Co. v. Med. Protective Co.*, 859 S.W.2d 789, 791 (Mo. Ct. App. 1993); *see also Ruiz v. Bar Plan Mut. Ins. Co.*, No. ED 106926, 2019 WL 4145480, at *5 (Mo. Ct. App. Sept. 3, 2019) (citation omitted); *Nooter Corp. v. Allianz Underwriters Ins. Co.*, 536 S.W.3d 251, 299 (Mo. Ct. App. 2017) (citation omitted).

In the policy, there are insuring agreements for five types of coverage: Individual Insurance Coverage, Company Reimbursement Coverage, Company Coverage, Adverse Media Event Coverage, and Derivative Demand Investigation Costs Coverage. Doc. #79-3, at 13. The parties agree Individual Insurance Coverage potentially applies to the Enslein Lawsuit. Doc. #79, at 22-25; Doc. #85, at 27; Doc. #87, at 8-13. Enslein and McKeon do not identify any other insuring agreement potentially implicated by the Enslein lawsuit. *See* Docs. #85-86. Regardless, the Court finds Company Coverage and Company Reimbursement Coverage are not implicated because no claim was made during the policy period, and the Adverse Mediate Event Coverage and Derivative Demand Investigation Costs Coverage are not applicable because the Enslein Lawsuit does not involve an adverse media event or derivative demand. Thus, the only applicable coverage is Individual Insurance Coverage.

The Individual Insurance Coverage insuring agreement states: "The **Insurer** shall pay **Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period**…for any actual or alleged **Wrongful**

**Act**…." Doc. #79-3, at 13. While the policy covers an individual insured's loss arising from a claim of an alleged wrongful act, the claim must be "first made against" the individual "during the policy period." *Id.* The Enslein Lawsuit alleges the former Xurex board members engaged in wrongful acts, but the Enslein Lawsuit was not "first made" during the policy period, which ran from June 1, 2014, to June 1, 2015. *Id.* at 3, 12. Consequently, the claims alleged in the Enslein Lawsuit are not covered by the insuring agreement.

Enslein and McKeon, however, argue the claims are covered by the policy. They point to the Enslein Lawsuit's allegations of "other matters, circumstances, or wrongful acts" committed by the Xurex board members during the policy period. Because the conduct giving rise to the claims in the Enslein Lawsuit occurred during the policy period, Enslein and McKeon contend the claims are covered by Part II of the General Declarations' Notices. Doc. #85, at 25-27; Doc. #86, at 12-13. While at least some of the alleged wrongful acts depicted in the Enslein Lawsuit "occur[ed] during the policy period," Enslein and McKeon fail to discuss the other requirement set forth in the clause upon which they rely – that is, how the claims alleged in the Enslein Lawsuit are "COVERED UNDER THIS POLICY." Neither cites anything in the policy (other than a cause in the General Declarations' Notices) that provides coverage for the claims in the Enslein Lawsuit. Significantly, neither discusses what insuring agreement provides coverage. Their failure to demonstrate the claims are covered by the policy is fatal because the insured has the burden of proving coverage. *See Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir. 2006) (citation omitted).

Enslein and McKeon argue Plaintiff disregards the General Declarations. The Court disagrees with the depiction of Plaintiff's position, and even if it did not, the Court is aware of and abides by its obligation to read the policy's provisions in the "context of the policy as a whole." *Columbia Mut. Ins.,* 967 S.W.2d at 77. While Enslein and McKeon ask the Court to focus its attention on the Notices of the General Declarations, almost to the exclusion of the remainder of the policy, the policy's General Declarations – much less, a clause contained in the General Declarations' Notices – do not govern the policy as they suggest.

The Missouri Supreme Court has held a policy's "declarations page do[es] not grant any coverage." *Floyd-Tunnell v. Shelter Mut. Ins. Co.*, 439 S.W.3d 215, 221 (Mo. banc 2014). "The declarations state the policy essential terms in an abbreviated form, and when the policy is read as a whole, it is clear that a reader must look elsewhere to determine the scope of the coverage." *Id.* (citation omitted); *see also Secura Ins. v. Northington*, 4:18-CV1315, 2019 WL 2476588, at *5 (E.D. Mo. June 13, 2019) (citations and internal quotations omitted). "[S]ince the declarations page cannot grant coverage, it cannot be used to argue that the insurer has promised something to the insured in the declarations page that is then later taken away by the more complete policy terms." *Geico Cas. Co. v. Clampitt*, 521 S.W.3d 290, 293 (Mo. Ct. App. 2017) (citation omitted). The Court must examine the "general insuring agreement as well as the [policy's] exclusions and definitions" to determine what risk is insured by the policy. *See Dutton v. Am. Fam. Mut. Ins. Co.*, 454 S.W.3d 319, 324 (Mo. banc 2007) (citation omitted).

In summary, the General Declarations cannot grant coverage for the claims asserted in the Enslein Lawsuit, the claims are not covered by the insuring agreement, and Enslein and McKeon have failed to establish coverage applies to the claims. Accordingly, the Court grants Plaintiff's motion for summary judgment on Count I of its Complaint.

### (2) Ambiguity of Coverage

Alternatively, Enslein and McKeon argue the policy is ambiguous, and the ambiguity must be construed in their favor. "An ambiguity exists when there is duplicity, indistinctness or uncertainty in the meaning of the policy [and] is reasonably open to different constructions." *Gulf Ins. Co. v. Noble Broad.*, 936 S.W.3d 810, 814 (Mo. banc 1997). However, the Missouri Supreme Court has held "[a]n insured cannot create an ambiguity by reading only a part of the policy and claiming that, read in isolation, that portion of the policy suggests a level of coverage greater than the policy actually provides when read as a whole." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. banc 2017). Thus, a "request for a truncated consideration of portions of the…policy is unavailing" because the policy must be read as a whole. *Id.* (citations and internal quotations omitted).

Upon examination of the policy as a whole, the Court finds there is nothing in the General Declarations that would lead an ordinary person of average understanding to believe the General Declarations (1) contain anything more than an abbreviated form of the policy's essential terms, (2) stand alone and are not subject to the policy's terms, and (3) grant occurrence coverage.

First, the Notices paragraph to the General Declarations, upon which Enslein and McKeon rely, states, "THIS POLICY PROVIDES CLAIMS-MADE COVERAGE." Doc. #79-3, at 3. This statement clearly informs the insured that the policy provides claims-made coverage. Noticeably, there is no mention of "occurrence coverage" in the same paragraph or anywhere else in the policy.

Second, the same paragraph explicitly directs the insured to "PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER." *Id.* Thus, to the extent the insured is unclear as to what is covered, the insured must carefully read the policy and review the coverage with the insured's agent or broker. When the insured reads the whole policy, it is clear the policy provides only claims made coverage.

Third, the same paragraph informs the insured that "EXCEPT AS EXPRESSLY PROVIDED FOR IN THE EMPLOYMENT PRACTICES LIABILITY **COVERAGE ELEMENT** AND THE FIDUCIARY LIABILITY **COVERAGE ELEMENT**, THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND." *Id.* This clause clarifies that the insurer is not assuming any duty to defend unless a claim is "expressly" covered by the "coverage element." When the insured reads the insuring agreement for the coverage element, it is clear that the policy provides only claims made coverage.

Fourth, the same paragraph declares "COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI…." *Id.* As discussed by the parties, an occurrence coverage policy is not based on notice, while a claims made coverage policy is based on notice.

The Court finds there is no "duplicity, indistinctness or uncertainty in the meaning of the policy" and holds the policy is not reasonably open to different constructions. Further, the Court cannot consider Enslein's and McKeon's "request for a truncated

consideration" of a portion of the General Declarations. When considering the policy in its entirety, the Court finds there is no ambiguity with regard to whether the policy provides claims based coverage and/or occurrence coverage. The policy provides only claims based coverage. Thus, Plaintiff is entitled to summary judgment on Count I.

### (3) Notification to Plaintiff

Even if the Court were to find the claims in the Enslein Lawsuit were covered by the insuring agreement for Individual Insurance Coverage, as discussed *supra*, section II(B)(1), Plaintiff would be entitled to summary judgment on Count II, which claims the Xurex board members breached the notice condition precedent.

Because a claims made policy is triggered by the date on which the insurer is notified, "[c]laims made policies place special reliance on notice." *Landry v. Intermed Ins. Co.*, 292 S.W.3d 352, 356 (Mo. Ct. App. 2009) (citation omitted).

> Notice must be given to the insurer during the policy period. If the insured does not give notice within the contractually required policy period, there is simply no coverage under a claims made policy, whether or not the insurer was prejudiced. This is because the event which invokes coverage in a claims made policy is transmittal of notice of the claim to the insurer. The very essence of a claims made policy is notice to the carrier within the policy period.

*Id.* (citation and internal quotations omitted)). A claims made policy "often provide[s] coverage when the insured provides notice of negligence acts or omissions *not yet* in litigation." *Id.* (citations omitted). It "provides additional protection for the insured, extending coverage to a lawsuit not brought until long after the policy has expired, so long as the insured provides *notice* to the insured during the policy period of *potential* claims." *Id.* (citation omitted). The claims made policy's notice provision "sets the parameters" for the policy's coverage. *Id.* (quoting *F.D.I.C. v. St. Paul Fire & Marine Ins. Co.*, 993 F.2d 155, 158 (8th Cir. 1993)). Put simply, "if there is no timely notice, there is no coverage." *Lexington Ins. Co. v. St. Louis Univ.*, 88 F.3d 632, 634 (8th Cir. 1996).

In the General Declarations' Notices, the insureds are told "COVERAGE…IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED AS REQUIRED UNDER SECTION VI." Doc. #79-3, at 3. Under Section VI, the insureds are informed that

providing notice to Plaintiff is a "condition precedent to the obligations of the **Insurer** under this policy…." *Id.* at 7. The notice provision requires the insureds to notify Plaintiff of any claim made against the insured "as soon as practicable but no later than 60 days" after June 1, 2015. *Id.* at 3, 7-8. The parties agree the Xurex board members did not comply with the notification provision. However, Enslein argues Plaintiff failed to show it was prejudiced by the lack of notice. Plaintiff maintains it is not required to show prejudice because the matter involves a claims made policy.

The Missouri Supreme Court determined it is a "generally accepted principle of law" that "[t]he prejudice requirement is generally not held to apply to claims made policies." *Wittner*, 969 S.W.2d at 754-55. "This is because…a claims made policy provides coverage when the act or omission is discovered and brought to the attention of the insurer, regardless of when the act or omission occurred." *Id.* (quoting *Ins. Placements, Inc. v. Utica Mut. Ins. Co.*, 917 S.W.2d 592, 597 (Mo. Ct. App. 1996)). "Because the reporting requirement helps define the scope of coverage under a claims made policy, to excuse a delay in notice beyond the policy period would alter a basic term of the insurance contract." *Id.*; *see also Secure Energy, Inc. v. Philadelphia Indem. Ins. Co.*, No. 4:11CV1636, 2013 WL 2145927, at *4-5 (E.D. Mo. May 15, 2013) (following Missouri precedent and finding the insurer was not required to demonstrate prejudice due to the insured's failure to provide timely notice) (collecting cases).

The Eighth Circuit has also addressed the issue: "the relevant Missouri cases emphasize that timely reporting of claims to the insurer under a claims made policy is an essential part of the contract." *Lexington Ins. Co.*, 88 F.3d at 635 (citations omitted). The Eighth Circuit concluded an insurer "need not prove prejudice to deny coverage" if the insured failed to timely report the claim under a claims made policy. *Id.* Pursuant to the foregoing cases, because the insureds failed to comply with the notice provision, Plaintiff is not required to show prejudice to deny coverage. Accordingly, the Court grants Plaintiff's motion for summary judgment on Count II.

### III. MOTION FOR LEAVE TO FILE SUR-REPLY

After Plaintiff filed its reply, Enslein moved for leave to file a sur-reply. He argues Plaintiff's reply (1) raises arguments for the first time; (2) misconstrues or conflates

16

Missouri law; and (3) misstates or mischaracterizes Enslein's statements. Doc. #88. Plaintiff opposes Enslein's request, arguing, among other things, the proposed sur-reply is unnecessary for the Court to decide the summary judgment motion. Doc. #89.

The Court disagrees with Enslein's characterization of Plaintiff's reply. Regarding Enslein's argument that new arguments were raised in the reply, the Court finds Plaintiff responded to arguments raised in the opposing parties' briefs. As to Enslein's arguments that Plaintiff misconstrued or conflated Missouri law and misstated or mischaracterized his statements, the Court reviewed and considered the applicable law and the parties' statements, without the parties' opinions as to what the other party stated. Accordingly, the Court did not consider it in ruling the pending motion. But, even if had considered Enslein's sur-reply, the Court would have reached the same outcome.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion for partial summary judgment, and denies Enslein's motion for leave to file sur-reply. Because the Court's ruling on Plaintiff's motion resolves this lawsuit in its entirety, the Court cancels the pretrial conference and trial and closes the matter.

IT IS SO ORDERED.

DATE: October 1, 2019

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT